# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EDWARD LOUIS CASLIN,**

        **Plaintiff,**

**-vs-**                                                   **Case No. 6:08-cv-1275-Orl-35DAB**

**PERSONAL CARE PRODUCTS, INC.,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration[1] with oral argument on the following motion filed herein:

> **MOTION:** MOTION FOR SANCTIONS (Doc. No. 58)
>
> **FILED:** October 15, 2009
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

In this product liability action in which Plaintiff alleges an aerosol can exploded injuring his eye, Plaintiff has filed a Motion for Sanctions (Doc. No. 58) against Defendant Personal Care Products ("PCP") for failure to disclose certain witnesses, documents, and exemplar aerosol cans pursuant to Federal Rule of Civil Procedure 26. The parties have partially resolved some of the issues as stated on the record at the hearing; the issue left to be decided at the time of the hearing is whether

---

[1] The matter was referred to the Magistrate Judge by Judge Scriven on November 9, 2009.

sanctions are warranted for PCP's failure to produce sooner quality-control documents from the can manufacturer and filler, Crown Metals and Assured Packaging, two non-party Canadian companies.

Plaintiff contends that these documents belatedly produced (in late September/October 2009) were within the ability of Defendant to produce much earlier in the discovery period more than one year ago when mandatory disclosures were required (October 2008); Defendant and counsel, despite previously representing they did not have access to this evidence from Assured Packaging and Crown Metal, have since "demonstrated a clear ability to obtain the documents on demand" from those entities. Doc. No. 58.

Defendant argues that Plaintiff chose not to sue Assured Packaging and Crown Metal; thus, it cannot be responsible for not being in possession of the documents "in the sole control of these other two entities." Doc. No. 62. Plaintiff also alleges specifically that Defendant was in possession of the documents and materials at issue at least a week before the deposition of Plaintiff's expert on September 14, 2009 based on very pointed questioning by Defendant's counsel; Plaintiff's counsel asked Defendant's counsel whether Defendant was in possession of any Assured Packaging and Crown Metal documents after defense counsel continually asked questions of Plaintiff's expert suggesting they existed, and Defendant's counsel unequivocally denied Defendant had any such

documents[2]. Doc. No. 58 at 7. The very next day, September 15, 2009, Defendant's counsel informed Plaintiff's counsel that Defendant would be producing such materials. Doc. No. 58 at 7.

Defendant's counsel represented in the response to the Motion for Sanctions that the quality-control documents concerning the can at issue were not received until September 21, 2009 (and provided to Plaintiff the same day) and the quality assurance/control documents were not received from Crown until October 1, 2009. Doc. No. 62.

Mr. Reynolds, counsel for PCP, testified that PCP was not in possession of any of the quality-control documents from Crown or Assured prior to the testimony of PCP's corporate representative in June 2009. Mr. Reynolds did not receive the quality-control documents[3] from Assured until September 21, 2009; he forwarded them to Plaintiff's counsel the same day. *See* Def. Ex. 15, 16. Mr. Reynolds did not receive the quality-control documents from Crown until the afternoon of October 1, 2009; he forwarded them to Plaintiff's counsel the following day[4]. *See* Def. Ex. 19, 20.

Ten months prior to the time the Crown documents were produced, Mr. Reynolds discussed with the attorney for Crown Metals a January 26, 2009 inspection of the aerosol can at issue to take place at the engineering firm hired as a consulting expert by Plaintiff; the attorney for Crown

---

[2] Mr. Didier [Plaintiff's counsel]: You keep referring to all these different [testing] documents. Is there something you have to show him the documents produced in discovery?
Mr. Morley [Defendant's counsel]: We produced everything we have. I'm sure Crown or Assured has plenty. We identified those for you.
Doc. No. 58-2 at 10 (depo. at 77).

[3] It is undisputed that the quality-control documents from both entities are relevant to the matters in dispute.

[4] Plaintiff's counsel clarified at the hearing that he does not believe there was a delaying in producing the documents once they were received; the delay was in PCP obtaining the documents from its business partners.

-3-

(Gassler) and two other representatives (Evangelista and Robertson) attended the inspection. Although Mr. Reynolds was not at the inspection, his erstwhile associate Mr. Morley was in attendance[5], as was PCP's expert, Mr. Johnson. A Crown representative, Ms. Evangelista, identified a invisible UPC code on the aerosol can at issue, which provided the predicate for the date of the can's inspection for quality control purposes, according to the deposition of Mr. Pocock, the quality-control expert from Crown. Mr. Reynolds learned on August 26, 2009 of Ms. Evangelista's role. PCP supplemented its discovery responses with Mr. Pocock's identity as an expert, but never identified Ms. Evangelista as a person with knowledge of relevant facts.

PCP was an additional insured on the insurance policy, Assured Packaging, under a vendor endorsement in a policy provided by Zurich Insurance and stated in a June 12, 2009 letter. Def. Ex. 8. Mr. Reynolds did not ask the PCP corporate representative, Mr. Weisberg, prior to his deposition in June 2009 whether he was an additional insured under the Zurich Policy. Def. Ex. 8, 10.

Based on the testimony received at the hearing by Mr. Reynolds, counsel for PCP, and the documentary evidence submitted at the hearing and attached as exhibits to Plaintiff's Motion, the Court finds that PCP did have effective control sufficient to obtain the Crown and Assurance quality-control documents. PCP had a right to and obtained indemnification from its vendors and, in addition, was an insured under the Zurich Policy contracted for by the vendor Assurance Packaging. To protect and further their community of interest, in addition to the contractual relationship between the parties; Assured had good reason to "voluntarily" produce its quality-control documents to PCP. Although

---

[5]Mr. Reynolds testified that Mr. Morley never told him who was at the inspection.

counsel for PCP did not disclose his efforts to Plaintiff's counsel, Mr. Reynolds[6] was making efforts in August and September 2009 to obtain the documents from Crown and Assured; he "hoped" that the documents would be "voluntarily" produced.

It is not clear why Mr. Reynolds did not recognize the issue sooner or why he delayed until nearly one year after discovery first began (in October 2008) to seek the quality-control documents from these entities, when Plaintiff's expert disclosure deadline was fast approaching on August 1, 2009. A letter dated September 17, 2009 from Mr. Morley to Plaintiff's counsel states, "from the outset of this litigation was have made it no mystery or surprise of PCP's intent to rely on Crown Metal and Assured Packaging as part of its defense." Def. Ex. 13. It was undisclosed to Plaintiff that PCP anticipated the existence and disclosure of quality-control documents from its business partners, Crown and Assured.

The prejudice to Plaintiff from the late disclosure of the quality-control documents is that Plaintiff's expert did not have the benefit of the quality-control documents on which to base its analysis and had to recreate and test the can and its contents at great expense, according to Plaintiff. PCP argues that its expert did not require the quality-control documents before completion of his report because its expert, Mr. Johnson, is so familiar with the industry such documents were unnecessary to his analysis.

As a remedy for PCP's delay in obtaining the documents through "voluntary" production from its business partners, Plaintiff is granted leave until December 15, 2009 to amend his expert's report.

---

[6]. Morley was also communicating with counsel for Crown at the time. *See* Doc. No. 82 at 99-100.

Any award of costs will be decided at the end of the case, dependent on circumstances as they exist at that time.

**DONE** and **ORDERED** in Orlando, Florida on December 1, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record